In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-2808

HARRIET WALCZAK,

*Plaintiff-Appellant,*

*v.*

CHICAGO BOARD OF EDUCATION,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 11 C 8409 — **Samuel Der-Yeghiayan**, *Judge.*

ARGUED FEBRUARY 13, 2013 — DECIDED JANUARY 10, 2014

Before BAUER, SYKES, and HAMILTON, *Circuit Judges.*

SYKES, *Circuit Judge.* Harriet Walczak was in her fourth decade of teaching in the Chicago Public School system when her school's new principal placed her in a performance-remediation program during the 2007–2008 academic year. By the end of that school year, she was facing discharge proceedings. Walczak thought that the principal had it in for

her based on her age (she was in her late fifties when the new principal started in 2006), so she filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging a violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq*.

While her EEOC charge was pending, Walczak was initially successful in the discharge proceedings: The hearing officer assigned to her case recommended that Walczak be reinstated as a tenured teacher. But the Chicago Board of Education rejected the hearing officer's recommendation and terminated her employment. Walczak filed a complaint in Cook County Circuit Court seeking judicial review of the Board's decision, arguing that it was unlawful under the Illinois School Code and that the Board had violated her right to due process. The circuit court affirmed the Board's decision, and the Illinois Appellate Court recently affirmed that judgment.

Shortly after the circuit court's decision, Walczak received a right-to-sue letter from the EEOC. She then sued the Board in federal court alleging that she was discharged because of her age in violation of the ADEA, 29 U.S.C. § 623(a)(1). The Board moved to dismiss, arguing that Walczak's ADEA claim was precluded because she could and should have included it in the state-court action. Walczak responded that the Board had acquiesced in her decision to split her claims between the two courts. The district court disagreed and dismissed the ADEA suit on the basis of preclusion.

We affirm. Walczak could have brought her ADEA claim in conjunction with her state-court suit for judicial review of the Board's decision to terminate her employment. *See Dookeran v.*

*County of Cook*, 719 F.3d 570, 577 (7th Cir. 2013); *Garcia v. Village of Mount Prospect*, 360F.3d 630, 644 (7th Cir. 2004); *Blount v. Stroud*, 904 N.E.2d 1, 17 (Ill. 2009). Her argument that applying claim preclusion would be inequitable is unpersuasive. The Board did not acquiesce to claim-splitting. To the contrary, the Board raised its preclusion defense as soon as Walczak brought her ADEA claim in the second suit. Because no exception removes Walczak's situation from the general rule against claim-splitting, the district court correctly held that her ADEA suit was precluded.

## I. Background

Walczak was hired as a teacher in the Chicago Public School system in 1970. She obtained tenure and taught continuously in the district through the 2007–2008 school year. In 1993 Walczak began teaching at Wells Community Academy High School. At the start of the 2006–2007 academic year, a new principal took over at Wells. Walczak alleges that the new principal was disdainful of the older teachers from the outset, calling them "dinosaurs" in front of both faculty and students.

The following school year the principal placed Walczak in a performance-remediation program. Among other aspects of the program, the principal assigned a mentor, but Walczak found the mentor ill-equipped to provide guidance. Walczak's complaint identifies several other ways in which the principal treated her differently than the younger teachers, including frequently interrupting her classes during the remediation

period. She claims that the principal was trying to "force [her] out."

In May 2008 the principal issued an evaluation of Walczak's performance indicating that she was not meeting expectations. A few days later the principal concluded that Walczak had failed to satisfactorily complete the remediation program and recommended that her employment as a tenured teacher not be renewed. On June 4, 2008, Walczak received a letter stating that she'd been "reassigned to the Area Office," and on June 12 she received a letter "discharg[ing her] from her tenured position." The June 12 letter notified her of the "charges and specifications against her" and "stated that she would receive a hearing on the charges."

In July 2008 Walczak filed a charge with the EEOC alleging age discrimination in violation of the ADEA. Meanwhile, Walczak's hearing on the principal's discharge determination did not take place until the spring and summer of 2009. On December 1, 2009, the hearing officer assigned to her case issued a 240-page report making extensive factual findings and recommending that Walczak be reinstated to her tenured position. In February 2010, however, the Board rejected the hearing officer's recommendation and terminated her employment. Walczak sought judicial review of the Board's decision in Cook County Circuit Court, arguing that the Board violated both the Illinois School Code, *see* 105 ILL. COMP. STAT. 5/34-83 to -85c, and her right to due process. In June 2011 the circuit court upheld the Board's decision. Walczak appealed to the Illinois Appellate Court, and on September 30, 2013, the

appellate court affirmed. *See Walczak v. Bd. of Educ.*, 2013 IL App (1st) 111972-U (Ill. App. Ct. Sept. 30, 2013).

On August 25, 2011—two months after the circuit court upheld the Board's decision and more than three years after Walczak filed her EEOC charge—the EEOC issued a right-to-sue letter notifying Walczak that it had ceased processing her charge and she had 90 days to file suit. In November 2011 Walczak sued the Board in federal court alleging age discrimination in violation of the ADEA, 29 U.S.C. § 623(a)(1). The Board moved to dismiss, arguing that claim preclusion[1] barred the ADEA suit because it arose out of the same set of facts as the action in Cook County Circuit Court.

Walczak responded with several arguments against preclusion: (1) there was no final decision with preclusive effect; (2) the Board acquiesced to the splitting of her claims between state and federal court; (3) she did not have a full and fair opportunity to litigate her claims; and (4) applying claim preclusion would be inequitable and would not advance the doctrine's purposes. The district court rejected Walczak's arguments and granted the Board's motion to dismiss. This appeal followed.

---

[1] The parties and district court used the term "res judicata" rather than "claim preclusion." Because res judicata can refer to either claim preclusion or issue preclusion, we use the more precise term. *See Dookeran v. County of Cook*, 719 F.3d 570, 574 n.2 (7th Cir. 2013).

## II. Discussion

The district court dismissed Walczak's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim,[2] so our review is de novo. *Dookeran*, 719 F.3d at 575. The preclusion rules of Illinois apply; the Full Faith and Credit Act, 28 U.S.C. § 1738, "requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 466 (1982); *see also Dookeran*, 719 F.3d at 575.

The doctrine of claim preclusion "provides that a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their privies on the same cause of action." *Rein v. David A. Noyes & Co.*, 665 N.E.2d 1199, 1204 (Ill. 1996). In Illinois the defense of claim preclusion has three prerequisites: (1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) an identity of the causes of action; and (3) an identity of parties or their privies. *Cooney v. Rossiter*,

---

[2] Claim preclusion is an affirmative defense, so the proper procedure is to raise the defense and then move for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. *See Carr v. Tillery*, 591 F.3d 909, 913 (7th Cir. 2010); *see also Forty One News, Inc. v. County of Lake*, 491 F.3d 662, 664 (7th Cir. 2007). Here the Board brought its claim-preclusion defense in a motion to dismiss under Rule 12(b)(6), which was technically incorrect, "[b]ut the error is of no consequence." *Carr*, 591 F.3d at 913. The district judge "had before him all he needed in order to be able to rule on the defense, and anyway the plaintiff does not complain about the error." *Id.* Nor does the error affect our standard of review. *See Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 619 (7th Cir. 2007).

2012 IL 113227, ¶ 18, 986 N.E.2d 618, 621. The second element is assessed by reference to the "transactional test," which provides that separate claims are considered the same cause of action for claim-preclusion purposes " 'if they arise from a single group of operative facts, regardless of whether they assert different theories of relief.' " *Id.* ¶ 21, 986 N.E.2d at 622 (quoting *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 893 (Ill. 1998)). Claim preclusion applies not only to matters that were actually decided in the original action but also to matters that could have been decided. *Id.* ¶ 18, 986 N.E.2d at 621 (citing *River Park*, 703 N.E.2d at 889); *contra Am. Family Mut. Ins. Co. v. Savickas*, 739 N.E.2d 445, 451 (Ill. 2000) (explaining that issue preclusion, or collateral estoppel, requires that "the party sought to be bound must actually have litigated the issue in the first suit" and must have had "a full and fair opportunity to present his case").

Although Walczak contended in the district court that there was no final judgment that could bar her ADEA suit, the district court correctly concluded that the circuit court's decision in the judicial-review proceeding constitutes a final judgment on the merits. Walczak prudently doesn't challenge that conclusion on appeal. Similarly, Walczak no longer argues that it was unclear whether she could have joined her federal employment-discrimination claim with her complaint for judicial review in Cook County Circuit Court. In 2009 the Illinois Supreme Court clarified that the state circuit courts have jurisdiction over federal civil-rights claims. *See Blount*, 904 N.E.2d at 17. We have held that Illinois litigants seeking circuit-court review of administrative proceedings implicating events that also give rise to a federal civil-rights claim must

join that claim with the judicial-review action in the circuit court. *See Dookeran*, 719 F.3d at 577; *Abner v. Ill. Dep't of Transp.*, 674 F.3d 716, 722 (7th Cir. 2012); *Garcia v. Village of Mount Prospect*, 360 F.3d 630, 643–44 (7th Cir. 2004); *see also Dookeran*, 719 F.3d at 578 n.4 ("[T]he Illinois circuit courts have jurisdiction to hear federal civil-rights claims … [,] and they may do so in tandem with judicial-review proceedings brought pursuant to statute or common-law writ of certiorari, *see, e.g.*, *Stratton v. Wenona Cmty. Unit Dist. No. 1*, 551 N.E.2d 640, 645–47 (Ill. 1990)." (parallel citations omitted)). So there is no dispute that the three basic elements of claim preclusion are satisfied here. Walczak could have joined her ADEA claim to her action in Cook County Circuit Court for review of the Board's discharge decision.

Walczak contends that her case nonetheless falls within an exception to the general rule against claim-splitting. She argues that the Board acquiesced to her pursuit of parallel tracks for her state and federal claims by failing to object or move for a stay of the proceedings in state court. In these circumstances, she contends, it would be inequitable to apply the rule of preclusion. *Rein*, 665 N.E.2d at 1206 (explaining that the "rule against claim-splitting" is "an aspect of the law of preclusion" and simply provides that a plaintiff may not sue for part of a claim in one action and then sue for the remainder in another action).

In Illinois "[t]he rule against claim-splitting has been relaxed … where it would be inequitable to apply the rule." *Id.* at 1207; *see also Nowak v. St. Rita High School*, 757 N.E.2d 471, 477 (Ill. 2001) ("*Res judicata* will not be applied where it would

be fundamentally unfair to do so."). Illinois looks to the Restatement (Second) of Judgments to assess when it may be inequitable to apply claim preclusion. *See Rein*, 665 N.E.2d at 1207 (citing RESTATEMENT (SECOND) OF JUDGMENTS § 26(1) (1982)). One such situation occurs where "[t]he parties have agreed in terms or effect that the plaintiff may split his claim, or the defendant has acquiesced therein." RESTATEMENT (SECOND) OF JUDGMENTS § 26(1)(a) (1982). The comment explains that when the plaintiff is "simultaneously maintaining separate actions based upon parts of the same claim," the defendant's failure to object to the claim-splitting "is effective as an acquiescence in the splitting of the claim." *Id.* § 26 cmt. a.

To support her acquiescence argument, Walczak relies heavily on *Saxon Mortgage, Inc. v. United Financial Mortgage Corp.*, 728 N.E.2d 537 (Ill. App. Ct. 2000). There, the plaintiff contracted with the defendant for the purchase of mortgage loans. *Id.* at 539. A few years later the plaintiff successfully brought suit against the defendant in federal district court on a claim that the defendant breached its contractual obligation to sell only investment-quality loans. *Id.* at 540. While the federal suit was pending, the plaintiff and defendant exchanged correspondence regarding eight specific loans. *Id.* The plaintiff explained that these loans had been paid off early and demanded repayment based on a different provision of the parties' agreement regarding mortgage redemption. *Id.* at 539–40. More than a year of correspondence ensued in which the defendant failed to pay but continued to insist that it would work toward an informal solution to the dispute. When that effort failed, the plaintiff brought suit against the defendant in state court a few months after judgment was entered in the

federal case. *Id.* at 539. The defendant moved to dismiss the complaint, contending that the plaintiff's claims were precluded by the judgment in the plaintiff's earlier federal suit. *Id.* at 541. The state trial court granted the defendant's motion and dismissed the case. *Id.*

The Illinois Appellate Court reversed. It first explained that the cases didn't involve the same causes of action because "the claim at issue in the prior federal action was of an entirely different nature from the claims set forth in the [state-court] complaint." *Id.* at 543. Specifically, the court noted that the loans at issue in the state-court case "took place during completely different time periods and could not have arisen out of the same factual matters" that were at issue in the federal suit. *Id.* Although the same underlying loan-purchase agreement was involved in both cases, the court nonetheless concluded that the cases involved "separate transactions." *Id.* at 544.

That holding was sufficient to justify reversal, but the court went on to discuss the equitable exceptions to the rule against claim-splitting. *Id.* at 545. The court concluded that it would be inequitable to apply the rule to preclude the plaintiff's state-court action because "the facts before the circuit court demonstrated that [the defendant] agreed to the resolution of the premium refund obligations separately from the dispute at issue in the federal action." *Id.* at 546. For support the court pointed to the "series of letters" in which the plaintiff and defendant not only discussed the issues that would eventually become the basis for the state-court complaint, *id.*, but engaged in negotiations to permit the defendant to "attempt to reduce

its indebtedness to [the plaintiff] based on future loans sales between the parties," *id.* at 540. Because the defendant had continuously given the impression that it wanted to resolve the eight loan-specific claims informally even as the federal proceedings proceeded to judgment, the court refused to apply claim preclusion.

*Saxon* demonstrates the unremarkable proposition that Illinois courts recognize acquiescence as an exception to the rule against claim-splitting. But that principle doesn't apply here. *Saxon*'s application of the acquiescence exception was premised on the fact that the plaintiff and defendant had been negotiating toward an informal resolution of the eight loan-specific claims during the pendency of the earlier-filed lawsuit—claims that the defendant itself insisted on treating separately and worked to settle in a mutually agreeable way. The circumstances here are materially different. Nothing in the record indicates that the Board acquiesced to Walczak's claim-splitting. The Board did not prolong the EEOC proceedings or engage in any action that would induce Walczak to refrain from bringing her ADEA claim before the state court. This is significant because although the ADEA requires aggrieved persons to file an administrative charge with the EEOC before filing suit, *see* 29 U.S.C. § 626(d)(1), it permits suit as soon as 60 days after they do so, *id.* §§ 626(d)(1), 633; 29 C.F.R. § 1626.18(b).

Here, Walczak's EEOC charge had been pending for almost two years when she filed her suit in Cook County Circuit Court seeking judicial review of the Board's discharge decision. She

could have joined her ADEA claim to that action at any time.[3]
*See Dookeran*, 719 F.3d at 577. By failing to take any steps to
preserve her age-discrimination claim in her action in state
court, Walczak allowed that court to enter a final, preclusive
judgment.

Walczak emphasizes that the Board knew about the EEOC
charge for years and could have raised its objection to claim-
splitting in the state court. But the Board was not required to
lodge a preemptive objection in the first suit in order to
preserve its right to assert a claim-preclusion defense in the
second suit. Until Walczak filed her ADEA claim in federal
court, no claim-splitting had occurred. The filing of an
administrative charge with the EEOC is not a parallel litigation
track; it is a necessary precondition to filing an ADEA claim in
any court.

When Walczak filed her ADEA lawsuit in federal court, the
Board immediately raised claim preclusion as a defense,
arguing that Walczak had improperly split her claims between
the two courts. This was the first time that the Board could

---

[3] Walczak says that she "allowed the EEOC to do its job" by not
"prematurely requesting a right to sue letter." But if Walczak wanted to
continue pursuing informal remedies with the EEOC before filing suit (the
filing of a civil action generally "terminate[s] further processing of the
charge," 29 C.F.R. § 1626.18(d)), there were several actions she could have
taken to preserve her ability to add her ADEA claim to the state-court suit.
First, she could have requested that the court postpone or stay the
proceedings until such time as her EEOC charge was resolved. *See Palka v.
City of Chicago,* 662 F.3d 428, 438 (7th Cir. 2011). Alternatively, she could
have ask[ed] the EEOC … to accelerate the administrative process. *Id.*
Walczak did neither.

have raised the argument, and it was the appropriate time to do so. The cases Walczak cites on this point are not to the contrary; each involved sequential judicial proceedings. *See Curtis v. Lofy*, 914 N.E.2d 248 (Ill. App. Ct. 2009) (same case refiled after a summary-judgment order); *Piagentini v. Ford Motor Co.*, 901 N.E.2d 986 (Ill. App. Ct. 2009) (same); *Thorleif Larsen & Son, Inc. v. PPG Indus., Inc.*, 532 N.E.2d 423 (Ill. App. Ct. 1988) (two cases filed in different counties); *Airtite, a Div. of Airtex Corp. v. DPR Ltd. P'ship*, 638 N.E.2d 241 (Ill. App. Ct. 1994) (a state-court case and a federal-court case referred to arbitration).

Finally, Walczak argues that applying claim preclusion here does not further the doctrine's purposes because even if she had joined her ADEA claim in the action in Cook County Circuit Court, that court was in no better position to assess her age-discrimination claim than the federal district court because it was only reviewing the administrative discharge proceedings. This argument fundamentally misunderstands preclusion doctrine. Applying preclusion rules doesn't involve a case-specific cost-benefit analysis assessing which court is better situated to decide the claim. Instead, preclusion doctrine seeks "to minimize 'the expense and vexation attending multiple lawsuits, conserve[] judicial resources, and foster[] reliance on judicial action by minimizing the possibility of inconsistent decisions.' " *Matrix IV, Inc. v. Am. Nat'l Bank & Trust Co.*, 649 F.3d 539, 547 (7th Cir. 2011) (quoting *Montana v. United States*, 440 U.S. 147, 153–54 (1979)) (alterations in original); *cf. Wilson v. Edward Hosp.*, 2012 IL 112898, ¶ 12, 981 N.E.2d 971, 976 ("The rule against claim-splitting is founded on the premise that litigation should have an end and that no

person should unnecessarily be harassed with a multiplicity of lawsuits."). Although Illinois recognizes equitable exceptions to preclusion, arguing that claim-splitting is "no big deal" on the facts of the case does not establish that applying preclusion is inequitable.

Because the Board did nothing to signal acquiescence to Walczak's claim-splitting and Walczak hasn't shown that applying preclusion is otherwise inequitable, the district court correctly concluded that her ADEA suit is precluded.

AFFIRMED.